UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

TEANDRA S. GILL,

    Plaintiff,

v.

SUBURBAN CADILLAC OF
LANSING, LLC,

    Defendant.
_____/

Hon. Phillip J. Green

Case No. 1:18-cv-676

## MEMORANDUM OPINION AND ORDER

This case arises out of Plaintiff Teandra Gill's brief employment with Defendant Suburban Cadillac of Lansing, Michigan. Plaintiff filed this action, *pro se*, pursuant to Title VII of the Civil Rights Act (Title VII) and the Elliott-Larsen Civil Rights Act (ELCRA), claiming that Defendant discriminated against her on the basis of her race and retaliated against her for complaining about discriminatory conduct by creating a hostile work environment and terminating her employment.[1]

This matter is now before the Court on Defendant's Motion for Summary Judgment. (ECF No. 40). Plaintiff has responded. (ECF No. 41). For the reasons articulated herein, the motion will be granted.

---

[1] Plaintiff's complaint is not a model of clarity. The Court is interpreting her claims and allegations indulgently.

## Background

The following facts are beyond genuine dispute.[2] Plaintiff began her employment with Defendant on August 15, 2016. She was hired to work in the Business Development Center (BDC), and her duties included responding to internet inquiries regarding the purchase or lease of vehicles, and scheduling appointments with sales and financing staff. She was one of three BDC representatives who were assigned to handle these internet leads. The internet leads were randomly assigned to the various BDC representatives on a "round robin system." The representatives were paid a salary plus an amount for each appointment scheduled, with an additional bonus for appointments kept. If a representative was absent from work, or for some reason did not respond to the lead within a specified period of time, the lead would be forwarded to the next representative in line. Similarly, if a BDC representative was not able to take a customer's call, that call would be forwarded to the next representative in line. (Complaint ¶¶ 22-26, ECF No. 1, PageID.5-6; Pltf's Dep. Tr. 18, 27-28 ECF No. 40-3, PageID.285, 294-95; Krueger Affidavit ¶ 3, ECF No. 40-2, PageID.262).

---

[2] Plaintiff's response to the summary judgment motion is replete with conclusory statements of "fact," which are largely unsupported by sworn statements or other admissible evidence. (*See* Pltf's Br. at 3-6, ECF No. 41, PageID.343-46). As such, the Court cannot consider this information in deciding the motion for summary judgment. *See* Fed. R. Civ. P. 56(c), 56(e)(3); *see also Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment." (quoted citation omitted)); *Dresher v. Lucas County*, Case No. 3:15-cv-585, 2016 WL 5338042 *2 (N.D. Ohio Sept. 23, 2016) ("Rule 56 'requires the nonmoving party to go beyond the [unverified] pleadings' and submit admissible evidence supporting its position." (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Plaintiff developed attendance problems shortly after coming to work for Suburban Cadillac. "She [ ] missed full days and would often come in late or leave early." (Krueger Affidavit ¶ 5, PageID.262).

In September 2016, Plaintiff began complaining that her leads were being "stolen." (Complaint at ¶ 27, PageID.6; Pltf's Dep. Tr. at 38, PageID.305). Nathan Krueger, the new car sales manager, attempted to explain to Plaintiff that, when she was absent from work, her leads were transferred to other BDC representatives. He also reviewed the records, which revealed that Plaintiff was receiving her share of leads, noting that "on many occasions she received the most leads of the department." (Krueger Affidavit ¶¶ 3-4, PageID.262).

Plaintiff's attendance problems continued. She missed work on December 8, 9, and 15. On December 16, 2016, Mr. Krueger and used car sales manager Karl Hassenwinkle met with Plaintiff to counsel her about her poor attendance.[3] At this meeting, Mr. Kreuger admonished Plaintiff that her poor attendance was unacceptable, that her attendance was being documented, and that continued poor attendance could result in termination. Mr. Krueger has similarly taken disciplinary action against Caucasian employees for poor attendance. (Krueger Affidavit ¶¶ 6, 9, PageID.262-63).

---

[3] The General Manager of Suburban Cadillac had been consulted about Plaintiff's attendance issues. He instructed Messieurs Krueger and Hassenwinkle to "monitor her attendance and [to] write her up every time she missed work." (Naszradi Affidavit ¶¶ 2-3, ECF No. 40-2, PageID. 265).

Plaintiff's attendance problems persisted. (*See* Employee Time Card Report, ECF No. 40-5, PageID.338-40). She left work at 1:52 p.m. on December 22, 2016, when she was scheduled to work until 6:00 p.m. (12/22/16 Request for Approved Time Off, ECF No. 40-5, PageID.336).[4] She noted that she left because she was "sick." (*Id.*). Plaintiff came to work four hours late on December 30, 2016. (1/2/17 Request for Approved Time Off, ECF No. 40-5, PageID.335). She ascribed her tardiness to "car trouble." (*Id.*). Plaintiff failed to appear at work at all on January 10, 2017. (1/12/17 Request for Approved Time Off, ECF No. 40-5, PageID.334). She simply noted: "called in/missed work." (*Id.*).

Mr. Kreuger then made the decision to terminate Plaintiff's employment due to poor attendance. (Krueger Affidavit at ¶ 8, PageID.263). Plaintiff's termination was effected January 12, 2017, and it was documented on an Employee Separation Form, signed by Plaintiff, which noted "excessive absenteeism." (ECF No. 40-4, PageID.332).[5] Mr. Krueger denies that Plaintiff's race played any role in this decision. (Krueger Affidavit at ¶ 10, PageID.263).

---

[4] Plaintiff appears to have signed each of the time-off requests that were being used to document her attendance. She has not disputed the accuracy of these forms.

[5] In her response to the motion for summary judgment, Plaintiff claims that she was forced to sign the separation form (Pltf's Resp. at 3, ECF No. 41, PageID.343), but she does not contest the accuracy of the contents of that document. In fact, in her deposition, Plaintiff acknowledged that she had attendance issues. (*See* Pltf's Dep. Tr. 21, ECF No. 40-3, PageID.288).

Plaintiff filed this action on June 18, 2018. Count one claims disparate impact racial discrimination, in violation of Title VII; count two claims hostile work environment racial discrimination, in violation of Title VII; count three raises a retaliation claim under Title VII; count four claims disparate impact racial discrimination, in violation of the ELCRA; and count five asserts a reprisal claim under the ELCRA.

## **Summary Judgment Standard**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th

Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## Analysis

### I. Plaintiff's Disparate Impact Claims (Counts 1 & 4).

In count 1 of her complaint, Plaintiff claims that Defendant violated Title VII in that "[its] unlawful business practices had an adverse and disproportionate impact on her because of her race/color, Black." (Complaint ¶ 47, PageID.9). Count 4 invokes the ELCRA, and it essentially mirrors the allegations of count 1. In each count, however, Plaintiff fails to specify the business practices at issue.

The factual allegations in the complaint include assertions that her immediate supervisor was stealing her internet leads, which resulted in a loss of commissions; that this same supervisor engaged her in unwelcomed conversations regarding the supervisor's extra-marital affair with another of Defendant's employees; that other employees questioned her about these conversations; and that her supervisor directed her not to disclose information about the extra-marital affair. (*Id.* at ¶¶ 27-32, 44). Plaintiff also alleges that Messieurs Hasenwinkle and Krueger questioned her about her immediate supervisor's alleged affair; that her immediate supervisor confronted Plaintiff "in a hostile manner" and later harassed her for truthfully answering Messieurs Hasenwinkle and Krueger's questions about the alleged affair; and that Defendant failed to properly investigate her complaints and to provide her with an effective complaint and grievance process. (*Id.* at ¶¶ 33-43).

In her deposition, Plaintiff was asked to identify how Defendant's business practices had a disproportional disparate impact on her due to her race. Plaintiff's response was simply "I was terminated – I experienced public shame and humiliation." (Pltf's Dep. Tr. at 47, PageID.314).

Title VII was enacted to "achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees." *Griggs v. Duke Power Co.*, 401 U.S. 424, 429-30 (1971). The Act prohibits employment practices that are facially neutral but "operate to 'freeze' the status quo of prior discriminatory employment practices." *Id.* To

prevail on a disparate impact claim, Plaintiff must, at a minimum, demonstrate that Defendant "use[d] a particular employment practice that cause[d] a disparate impact on the basis of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(k)(1)(A)(i).

The ELCRA essentially mirrors Title VII. Accordingly, in analyzing disparate impact claims under that statute, Michigan courts apply federal substantive law relating to Title VII claims. *See, e.g., Jones v. Pepsi-Cola Metropolitan Bottling Co., Inc.*, 871 F. Supp. 305, 308 n.4 (E.D. Mich. 1994) (citing Michigan cases).

Plaintiff has failed even to identify an employment practice that had a disparate impact on her because of her race; much less has she offered evidence to support such a claim. Defendant is entitled to summary judgment.

## II. Plaintiff's Intentional Discrimination Claims (Count 2).

In Count 2 of her complaint, Plaintiff claims that Defendant intentionally discriminated against her on the basis of her race by stealing her internet leads, and thereby reducing her commissions; by creating a hostile work environment; and by terminating her employment. She cites only to Title VII as the jurisdictional basis of this claim.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment[] because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A claim of intentional discrimination can be established through either direct

or circumstantial evidence. *See, e.g., Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648-49 (6th Cir. 2012) (citing *DiCarlo v. Potter*, 358 F.3d 921, 926 (6th Cir. 1999)). " 'Direct evidence, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.' " *Shazor v. Professional Transit Mgmnt*, 744 F.3d 948, 955 (6th Cir. 2014) (quoting *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006)). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Ondricko*, 689 F.3d at 649 (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)).

When asked to identify any evidence that race played a part in the "theft" of her internet leads, Plaintiff offered nothing more than the conclusory statement: "My leads were stolen because I was an African American female." (*Id.* at 20, PageID.287). This is manifestly insufficient to create a triable issue. *See Mav of Mich., Inc. v. American Country Insur. Co.*, 289 F. Supp.2d 873, 875 n.3 (E.D. Mich. 2003) (" 'Conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact' and are insufficient to withstand a motion for summary judgment." (quoting *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002)).

By her own account, Plaintiff's hostile work environment claim is predicated on conversations she had with her immediate supervisor regarding that supervisor's alleged extra-marital affair with another, unnamed employee. Putting aside whether Plaintiff's description of the alleged harassment is sufficiently severe and pervasive to

be actionable under Title VII,[6] it suggests nothing of race. To the contrary, Plaintiff complains that her supervisor began harassing her after the supervisor learned that Plaintiff had truthfully answered Messieurs Hessenwinkle and Krueger's questions about the alleged affair. Plaintiff offers nothing to suggest that her immediate supervisor would have reacted differently had Plaintiff been a white person.

With respect to her termination, Plaintiff conceded that she was told that her termination was based on her poor attendance, and she acknowledged that she had a problem with absenteeism. (*See* Pltf's Dep. Tr. at 21, PageID.288). Defendant has provided unrebutted testimony and unrefuted documentation regarding Plaintiff's absences on December 8, 9, and 15, 2016 (*see* ECF No. 40-5, PageID.337), resulting in a December 16, 2016, counseling session in which Messieurs Krueger and Hessenwinkle warned Plaintiff that continued absences could result in her termination (*see* Krueger Affidavit at ¶ 6, PageID.262-63). Additional documentation shows that Plaintiff had continued attendance problems on December 22, 2016, and on January 2 and 10, 2017, resulting in her termination on January 12, 2017. (ECF No. 40-4, PageID.332; ECF 40-5, PageID.334-36).

---

[6] To be actionable under Title VII, the harassment would have had to be sufficiently severe and pervasive to create " 'an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive.' " *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)).

The only semblance of direct evidence of racial discrimination that Plaintiff offers is comments she overheard a supervisor make to the effect that he was "slave driving" the employees in his department. (*See* Pltf's Dep. Tr. at 16-17, PageID.283-84). Plaintiff could not positively identify the supervisor beyond his first name, "Duane," nor could she identify the department or employees he supervised – it is certain, however, that he was not in her chain of supervision. (*See id.* at 16-18, PageID.283-85). Plaintiff never brought these comments to the attention of anyone in management. (*Id.* at 19, PageID.286).

Plaintiff's reliance on "Duane's" slave-driving comments is insufficient to avoid summary judgment. Assuming that the statements were made, and giving Plaintiff the benefit of the inference that they evince a racial animus, Plaintiff is unable to link the comments to anyone in her line of supervision, much less Mr. Kreuger, who made the decision to termination her employment.

Rather, the undisputed facts lead inevitably to the conclusion that "Duane's" slave-driving comments were unrelated "stray remarks." Stray remarks are "general, vague, or ambiguous comments [and] do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a discriminatory animus.'" *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 798 (6th Cir. 2013) (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 708 (6th Cir. 2008)).

In determining the significance of such remarks, the Court may consider the following factors: (1) whether the remarks were made "by the decision maker or by an

agent of the employer uninvolved in the challenged decision"; (2) whether the remarks were "isolated or part of a pattern of biased comments"; (3) whether the remarks made "close in time or remote from the challenged decision"; and (4) whether the remarks were "ambiguous or clearly reflective of discriminatory bias." *Krohn v. Sedgwick James of Mich., Inc.*, 244 Mich. App. 289, 292 (2001); *see also Worthy v. Michigan Bell Telephone Co.*, 472 F. App'x 342, 347 (6th Cir. 2012) (listing the same factors) (citing *Department of Civil Rights ex rel. Burnside v. Fashion Bug of Detroit*, 473 Mich. 863 (2005)).

In this case, Plaintiff concedes that "Duane" was not her supervisor, and he apparently had little or no involvement in her work life. (*See* Pltf's Dep. Tr. at 16, PageID.283 ("He worked in a different department, his name is Duane. And that would be all I know about that individual.")). To be sure, there is no evidence that this supervisor was involved in any decision relating to the terms and conditions of Plaintiff's employment, including her termination. Further, Plaintiff concedes that she has never heard anyone in her line of supervision make a racially-discriminatory remark. (*See id.* at 15-18, PageID.282-85). Accordingly, and applying the *Krohn* factors, "Duane's" comments are nothing more than stray remarks.

The Sixth Circuit has consistently held that, for a statement to constitute evidence of discrimination, it must come from the decision maker. *See Geiger*, 579 F.3d at 620-21; *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004). "Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of

demonstrating animus." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (internal quotation marks omitted); *see also Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002) (comments by a manager lacking any involvement in the decision-making process do not constitute direct evidence of discrimination).

Absent direct evidence of racial discrimination, Plaintiff must rely on the modified *McDonnell Douglas* burden-shifting approach. To establish a *prima facie* case of racial discrimination in the context of this case, Plaintiff must show: (1) that she is black, (2) that she was qualified for the position of BDC representative, (3) that she was terminated from that position, and (4) that the position remained open and was ultimately filled by a white person. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the *prima facie* case is established, a rebuttable presumption of discrimination arises, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. *St. Mary's Honor Center*, 509 U.S. at 506-07. Nevertheless, " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Id.* at 507 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

It is not entirely clear to this Court that Plaintiff can satisfy all the elements of a *prima facie* case (particularly with respect to whether Plaintiff was replaced by a white person), but Defendant has conceded this point. (*See* Def's Br. at 10, PageID.253).

Accordingly, the Court must consider Defendant's explanation that Plaintiff's internet leads were disbursed equitably to all BDC representatives, including Plaintiff, and that, to the extent Plaintiff's leads were given to another representative, it was due to her absence from work. (Krueger Affidavit at ¶¶ 3-4, PageID.262). The Court must also consider Defendant's stated reason for terminating Plaintiff's employment: "poor attendance." (*Id.* at ¶ 8, PageID.263; *see also* Employee Separation Form, PageID.332 ("Excessive Absenteeism")). With that, the burden shifts back to Plaintiff to demonstrate that Defendant's explanations are pretextual. *See, e.g., Burdine*, 450 U.S. at 257-60. "To survive summary judgment, [Plaintiff] 'must produce sufficient evidence from which a jury could reasonably reject [Defendant's] explanation of why it' took an adverse employment action against [Plaintiff]." *Redlin v. Grosse Pointe Public School System*, 921 F.3d 599, 612 (6th Cir. 2019) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).

This Plaintiff has not done. She has offered nothing in response to the summary judgment motion upon which a reasonable fact-finder could conclude that Defendant's explanations are a pretext for racial discrimination. To the contrary, Plaintiff has corroborated, at least to some extent, that her employment was terminated for poor attendance. (*See* Pltf's Dep. Tr. at 21, PageID.288 (testifying that she did not disagree with Defendant's assertion that she had an absentee issue)).

Given Plaintiff's concession that she had absentee issues, and that it is the stated basis of Defendant's decision to terminate her employment, the Court will consider whether Plaintiff has raised a "mixed-motive" claim of discrimination.[7] A mixed-motive claim is one in which "an adverse employment decision was the product of a mixture of legitimate and illegitimate motives." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 571 (6th Cir. 2003) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 (1989)). To survive summary judgment on such a claim, Plaintiff must present sufficient evidence, direct or circumstantial, from which a jury could reasonably and logically infer that her race was a motivating factor in Defendant's decision to terminate her employment. *See Ondricko*, 689 F.3d at 649. For the reasons articulated above, Plaintiff's evidence fails to meet that burden.

### III. Plaintiff's Retaliation Claims (Counts 3 & 5).

In Counts 3 and 5, Plaintiff asserts claims of retaliation under Title VII and the ELCRA, respectively, alleging that she made informal complaints about Defendant's "unlawful, discriminatory employment practices." (Complaint ¶¶ 65, 80, PageID.11, 13). She alleges that these complaints resulted in materially adverse actions being taken against her, including issuing threats of termination, reprimands, public

---

[7] A party is normally required to give notice of a mixed-motive claim. *See Spees v. James Marine, Inc.*, 617 F.3d 380, 390 (6th Cir. 2010). "This treatment can be triggered expressly by invoking the mixed-motive analysis or impliedly through use of the motivating factor test in the complaint and response pleadings." *Ondricko*, 689 F.3d at 649. Plaintiff has done neither. Nevertheless, and in an abundance of caution, the Court has reviewed the record to determine whether there is sufficient evidence to support a mixed-motive claim in this case.

humiliation, and unlawful termination. (*Id.* at ¶¶ 66, 82, PageID.11, 13). The only disciplinary action that is in evidence in this case is Plaintiff's termination, which was preceded by Mr. Krueger's counseling session with Plaintiff regarding her absentee issues and his warning that continued problems in that regard would result in her termination. (Krueger Affidavit at ¶ 6, PageID.262-63).

Plaintiff does not specify the nature of the informal complaints that prompted the retaliation, but it would appear to be her complaints to Mr. Kanerva in September 2016 that internet leads were being stolen from her, which she believed to be racially motivated (*see id.* at ¶¶ 27-28, 34, PageID.6-7), and her complaints to Mr. Kanerva in October 2016 that she was experiencing "harassment, wage theft and retaliation by daily intrusion of [her immediate supervisor's] unwelcomed conversation of a sexual nature," to which Mr. Kanerva provided assurances that he would investigate (*id.* at ¶¶ 32-34, PageID.7). Mr. Kanerva was relocated to another dealership in November 2016, and he was replaced by Mr. Hasenwinkle. (*Id.* at ¶¶ 35-36, PageID.7).

As with claims of discrimination, retaliation claims under Title VII and the ELCRA may be proved with direct or circumstantial evidence. *Redlin*, 921 F.3d at 613.[8] To establish a *prima facie* case or retaliation, Plaintiff must prove: (1) that she engaged in protected activity; (2) that her exercise of that protected activity was known by Defendant; (3) that, thereafter, Defendant took an action that was "materially adverse"

---

[8] "The analysis of a retaliation claim brought under the ELCRA 'is identical to the Title VII analysis.'" *Redlin*, 921 F.3d at 614 (quoting *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 627 (6th Cir. 2013).

to her; and (4) that there was a causal connection between the protected activity and the materially adverse action. *See id.* at 613 (citing *Trujillo v. Henniges Auto. Sealing Sys. N. Am., Inc.*, 495 F. App'x 651, 730 (6th Cir. 2012)). Success on the *prima facie* elements shifts the burden of production to Defendant to articulate "a legitimate, non-retaliatory reason for the [adverse action]." *Mansfield v. City of Murfreesboro*, 706 F. App'x 231, 236 (6th Cir. 2017). Should Defendant meet its burden of production, the burden shifts back to Plaintiff to prove the reason was a pretext. *Id.* Plaintiff bears the burden of persuasion throughout this process. *Id.*

Defendant does not contest, for the sake of its summary judgment motion, that Plaintiff engaged in protected activity (which was certainly known to Defendant) and that she suffered a materially adverse action in her termination. (Def's Br. at 13, PageID.256). Defendant denies, however, any causal connection between the two, and it relies on its asserted legitimate business reason for Plaintiff's termination. (*Id.* at 13-14, PageID.256-57).

The causal connection element of a Title VII retaliation claim requires traditional but-for causation, wherein a plaintiff must show " 'that the harm would not have occurred' in the absence of – that is, but for – the defendant's conduct." *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 346-47 (2013) (quoting RESTATEMENT OF TORTS § 431, Comment a (negligence)). Plaintiff has failed to offer evidence by which any reasonable juror could conclude not only that her absenteeism was not the true cause of

her firing, but also that her employment with Defendant would have continued "but for" her complaints regarding stolen internet leads.

Plaintiff's allegations to the effect that her immediate supervisor harassed and humiliated her similarly suffer from a lack of causal connection to any protected activity.[9] To the contrary, Plaintiff's own account cites to the disclosure of her immediate supervisor's alleged extra-marital affair as the cause of that supervisor's discontent. (*See* Complaint at ¶¶ 36, 38).

Accordingly, Defendant is entitled to summary judgment on Plaintiff's Title VII and ELCRA retaliation claims.

---

[9] For the purposes of this Opinion, the Court is assuming, without deciding, that Plaintiff's description of the alleged harassment is sufficient to constitute a "materially adverse action." To demonstrate a materially adverse action, Plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a [complaint] of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). This element is easier to meet in the retaliation context than with respect to establishing a *prima facie* case of discrimination. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 69 ("excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement" was potentially materially adverse).

## Conclusion

For the reasons articulated herein, the Court concludes that Defendant is entitled to summary judgment on all Plaintiff's claims and that the case should be terminated. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 40) is **GRANTED**, and judgment will be entered in its favor.

Date: January 14, 2020 /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge